5062 Miller v. United States. Ms. King, please proceed. Thank you. May it please the Court, I'm Donna King and I represent the appellant Ruth Miller in this appeal. She has appealed from a decision of the Court of Federal Appeals. And the two issues as framed by the appellant are whether the Court of Federal Claims erred in dismissing a claim for breach of employment contract by ruling that there was not enough evidence presented at the outset of the case to rebut the presumption of employment by appointment, and two, whether the Court of Federal Claims erred in granting summary judgment on appellant's Federal Employee Pay Act claim, and ruling that an appellee can take away appellant's 25% standby pay. On the contract issue, isn't 7401 that specifically provides for the appointment of these type of technologists your biggest problem here? That it provides for appointment. Appointment. That doesn't preclude a contract for these individuals. And what's presented in the briefing is that in this very situation, the presumption is rebutted that there was a contract between Ms. Miller and the U.S. government for her employment, that she was a radiologic technologist starting in 1998. Her employment with the government started prior to that. But her current position as a technologist started in 1998, and at that time there was a standby program in place because it was determined by the VA that more had to be offered than the appointment. But the problem is that, as I understand the analysis we're supposed to do, an employee is either an appointee or a contract employee. And the mere fact that there might have been an agreement as to how much this person was going to make doesn't transform them from an appointee into a contract employee. If Your Honor is getting to the issue of actually having a written contract in place, the problem that's presented here is that this was now 15 or 16 years ago, and the written document has been lost with time. No, that's not actually the point I'm making, because even if you had a written agreement as to pay, is that enough to transform someone from an appointee to a contract employee? Well, appellant states that, considering the circumstances here, the fact that two supervisors, including the head of the VA department in Baltimore, went down to the central office here in D.C., went to an appeal, and specifically secured this pay not just for Ms. Miller but for other employees as well, does take that out of appointment and out of the realm of standby or on-call. I mean, it's true that what they were following was the standby, but standby was being phased out. And the whole point was that to be able to attract enough technologists to come to the VA hospital, that there had to be something different than appointment. And so this program stayed in place, and even though it was being phased out, it was specifically approved for Ms. Miller and at least one other employee who were not grandfathered in under the standby pay. Can I ask you, is it your view that the contract that was entered into was essentially of indefinite duration, that for as long as she chose to stay in the job, she had a contract with the government that it would pay her according to this 25% supplement? Yes, there was nothing in the discovery that indicated that there was any stopping point to the contract. I guess that strikes me as sort of surprising that there would be an employee contract or just a contract for employment that lasted for the working life of the employee, binding against the government, not terminable by the United States. Should I not be surprised at that kind of contract? Well, that was what was in place for the other employees who ultimately stayed until they retired. But considering that there was such a need for the technologists, I don't think it would be surprising that there wasn't a set date that says this contract ends two years from now. No, but that it wouldn't be terminable, at least as to the term, as to the pay provision by the United States, that the United States is binding itself to, I mean let's assume she had 25 years more of her career, that it just entered into a contract that for the next 25 years, if she stayed in the job, she would get a certain amount of pay. Is there practice of that sort of thing? I'm not aware. I'm just aware of this situation and how it worked for the other employees who were under the same program, that they ultimately did stay until they retired. But she was still subject to performance reviews, which were never an issue. And that's the working mechanism of the program as it was set up. Unfortunately, through time, we no longer have the actual document. And that was the problem for the outset of the case, is that there was a requirement that there must be a showing of jurisdiction to preponderance of the evidence. But without the written document, we had to piece together what we could, including with the supervisor's testimony. Even if we completely agree with you that there was an obvious understanding and agreement with Cox that she was going to make this money and that it was never going to end, even if we agree with that, how is that enough to transform her into a contract employee? I mean you agree that she's a federal employee, correct? Yes. Under Adams, doesn't the court expressly state that even in circumstances that might give rise to an understanding of a contract for nonfederal employees, that that would not be enough to transform an actual federal employee into a contract worker? Well, first, it wasn't just Mr. Cox who was making a promise or creating a program. It was approved by the agency itself. And so although this was rather out of the ordinary, the presumption that there was merely an appointment has been rebutted by these circumstances. Although we don't have the written contract today, what we do have is the fact that we have the testimony that this appeal happened, that it was approved, that this specific pay was approved for this employee, and that it happened for 13 years and that through each payroll person there was an understanding that this was the agreement, this was a contract that this employee was working under, and it wasn't until there was this perfect storm of Robert Cox retiring and a new payroll person coming in that we have this situation where the new payroll person simply didn't understand what was happening and this ball got into action so that today, unfortunately, a paland is only receiving a fraction of what her salary actually was. So there was an agreement, there was a contract in place between the government and Ms. Miller, and they both acted in accordance with that for at least 13 years before slowly hours and then her standby pay in totality was taken away. You can see that you're not arguing a promissory estoppel theory. No. And are you arguing an implied in fact contract based on the number of years, or are you just arguing a factual contract? Just arguing that there was a contract. And the contract, the document that you've referenced a couple times that you say you no longer have, what is the nature of your allegations about that document? Are you just referring to the memo that is discussed in the definition testimony that was the memo signed by her supervisor seeking permission that was ultimately granted to give her this higher pay, or are you suggesting there at some point existed like a signed witnessed document between government officials and signed witnessed by your client as well? What is the nature of the document you say has disappeared and no longer exists but once did exist? Mr. Cox believed that there was a written document. He referred to it as a memo. That's why I'm trying to understand are you saying, because his deposition testimony is at page 188 to 192 if you want to look at it in the appendix, but my recollection is he says it's a memo and he said he signed it, but he says he signs all of his memos and it was the memo that he submitted requesting and seeking and then ultimately obtaining approval to pay her the higher rate. Is that memo the document that you're saying constitutes a contract? No, that there should be something else that would have been within Mr. Cox's files that was lost or destroyed over time. Is there some evidence of that from your standpoint? Are you telling me the testimony at 188 and 192? I'm trying to understand what this document is that you're calling a contract, what your allegations are with regard to it. Well, that there would have been a document that would have come from the central office after the appeal that would memorialize. After his memo requesting approval to pay her a higher amount. Yes, and then unfortunately when he retired, the contents of his office were thrown away and so we no longer have that. So you think he didn't just get an oral approval. He clearly testified that he got the approval. Correct. And so what you're saying is that there should have been some kind of document that he would have kept in his files reflecting that approval. Yes, it's now unfortunately gone. But I see my time is up. Well, we'll save the rest for rebuttal. Counsel for the government. Please proceed. Good morning, Your Honors. May it please the Court. Federal employees do not have contractual relationships with the government, barring an explicit agreement otherwise. Part of the problem for me here is that I've rarely seen a case where the equities go so far against the government. I mean, you don't really dispute that Mr. Cox got the approval to pay her in this fashion, right? Your Honor, we do not dispute that. It wasn't an administrative error to pay her that way, despite the fact that the later employee that adjusted her pay called it that, right? Well, it was an error because she is not entitled to this pay under the statute. Wait, the statute 5 U.S.C. 7455 allows for the secretary and the agency to increase basic rates of pay at their discretion. Yes, Your Honor. So why are you saying it was an error? You agree that approval was sought and obtained all the way up the levels of the chain of command within the agency. There's a statute that expressly authorizes not only this statute, which was put into effect in 2010, but its predecessor, which was put into effect in 1992, which is virtually identical. So there's a statute that allows for increasing basic rate of pay if necessary. That's what it says, if necessary, at the discretion of the secretary. So why would it have been an administrative error for them to have paid her that additional amount? Well, Section 7455 does permit the VA to increase her basic pay, but that's not what happened here. What they did instead was to Mr. Cox sought an exception to the... Right, and it went all the way up the chain and it was approved, right? Right, but only pursuant to 5545, which doesn't increase her basic pay. It's a 25% premium that's added to her basic pay. A 25% premium added to her basic pay doesn't, under the language of this statute, increase rates of basic pay? It does not. Those are two separate ways of increasing a person's pay overall. But, for example, if she came in at a GS-8 and her salary was $40,000, they would say, under 7455, instead of it being $40,000, we're going to make it $45,000 to recruit you. Under 5455, instead, they would say, we're going to add 20% to the $40,000 that we're offering you as your salary, and that's what happened here. It seems like a distinction without a difference. Is there some objective consequence that differentiates those two things? That is that basic pay is used for some purpose so that it would remain, in your example, the 45, and as a result of the 45, I don't know, pension contributions or something is keyed to that, rather than the 40 plus the 20% of that? Well, it would result in different amounts of her total salary. Suppose the same dollar amount net per year resulted. What's the difference between that dollar amount coming from 100% basic pay and some amount basic pay plus a 25% kicker? Well, there would be no difference, but that's not what happened here, and that's not what Ms. Miller is claiming that she's entitled to. Are you saying Cox and everybody up the chain broke the law? Yes, Your Honor, they did. The VA is not entitled to enter into contractual agreements that are contrary to law, and for standby pay, there is a specific criteria that the employee must meet. The VA has no discretion with respect to whether it pays up that type of pay. Either you fit within the criteria or you either meet the criteria or you don't, and Ms. Miller does not meet the criteria. I could only speculate that the VA could have possibly sought some sort of recruitment bonus on her behalf, but according to the facts of this case, they did not. They only sought standby pay for her because that is what the other. Standby pay because they needed to recruit her because they didn't have enough technologists. Standby pay because that's what the other technologists were receiving. Right, so they were all illegally being paid too? No, those employees were receiving standby pay before the law had changed. When Ms. Miller came in, the law had been changed for many years. Right, and all the supervisors all the way up said that they would grant one more exception because the government needed to hire and recruit this person. That is correct. If this was also illegal, then why aren't you trying to recapture all the money that was paid to her over the years? By the way, I certainly hope that you're not planning on doing that. We're not. The VA has decided that it will not seek to recoup this money, and as far as we know, there is no law that requires the VA to seek to recoup this money. I do know, for example, there are instances in which for financial hardships, for example, employees can ask for waivers. So it does seem to suggest that VA is totally within its rights to decide not to seek to recoup the money. Does your argument depend on the premise that this extra pay was unlawful from the get-go? Essentially, yes, because we're not disputing that it was authorized. We do not dispute that. But that she is not entitled, under the statute that she seeks, for this particular type of compensation. But isn't it a better argument to simply say that even if authorized, that the VA had the authority to unauthorize it at some point in time? The VA has a duty to follow the law. So when it recognized that it was acting in- It didn't really recognize. I mean, the only real error was thinking that there had been an error, right? I mean, this was some new bookkeeper who came in and said, this must be an administrative error, not recognizing that she had been receiving this with her supervisor's approval for years and years and years, right? According to one of the personnel's testimony, there was some type of error or something in the system, and that sort of was the catalyst that sort of made her go and double-check and see- But why don't you simply argue that at some point, the VA had the right to revisit the understanding or the approval and to take it away? Well, that is true, Your Honor. The VA has a duty to correct any errors that it makes, and any agreements that they have that are contrary to the law must absolutely be corrected. So that is actually very true. But the basic premise is that she just has not rebutted the presumption that she is an appointee. All of the evidence here suggests that she is an employee by appointment. Can you say something, if you know, about the kind of real-world practical question that I asked earlier about whether a kind of indefinite-in-time perpetual government promise to an employee is the kind of contract that the government ever, sometimes, rarely enters into that says, we hereby guarantee that as long as you remain qualified for the job and we continue to need this job filled, as long as you're in it, we hereby contractually promise to pay you this for the next 25 or 30 years? Your Honor, I'm not aware of instances of that. I would presume that that's quite rare, if at all that happens with federal government employees. Regarding back to the posture of this case, I mean, basically your argument was that the Court of Federal Claims didn't have jurisdiction. So you sort of blended the merits with the jurisdictional question. Why isn't her allegation that she only agreed to accept the position in return for this payment that was clearly approved, why isn't that enough to at least get past a motion to dismiss? With respect to the merits or the jurisdictional argument? Your jurisdictional argument. Well, she hasn't produced really any evidence that there was a contract here. All of her hiring documents... Does she have to produce evidence on a motion to dismiss? Well, bare just conclusory allegations will not suffice. I mean, they're not that conclusory when there's no doubt that she was getting that pay and there's no doubt that she was in that position that the government was having trouble recruiting, right? Right, Your Honor. Yes, that is correct. And you're not disputing that all of this was communicated to her in advance of her accepting the job by her supervisor and approved throughout the agency. So why isn't that enough circumstantial evidence to create a contract? I'm not saying it prevails at the end of the day, but a motion to dismiss is a pretty low bar. I understand, Your Honor. And perhaps that was sufficient, but if that was error, it was harmless error because she does not prevail on this claim at all. There is no evidence of a contract. So if the court erred, it was harmless error. To be clear, Mr. Cox testifies that he had written a memo, right, page 188 through 192, that he had written a memo, that he had signed it, it got approved all the way up, and he says in his testimony, there are documents to support this, and he even identifies his secretary by name, and he said they'd probably be in her computer, not in his computer. So why can't we think that, okay, there's something here, it survives jurisdiction, the jurisdictional claim that you've made against it, and so allow discovery to dig into those files and see if there is written proof somewhere. Your Honor, even if there is written proof, again, the government cannot enter into an agreement that is contrary to law. And OPM v. Richmond instructs us of that, that despite what may have been agreed to, the government is neither bound nor stopped by acts or agreements to do what the law does not permit. And in this case, the law just flat out does not permit the government to pay her standby. Unless she was a contract employee. Right, and she's not, and the VA could have done that. They do that all the time. But again, you're saying she's not, but we never got passed a motion to dismiss. She is not, she admits that she is a federal employee, and the presumption is that she is one by appointment rather than by contract. It's a presumption that's rebuttable though, right? Yes, Your Honor, and it is our position that she has not rebutted this presumption because the hiring official sought authorization for this pay does not make this a government contract that is enforceable or that the government is bound by. He didn't just seek it, right? He obtained authorization for it. Yes, he did seek authorization. I mean, he did receive approval for the standby pay, but that would be a very rare situation in which an employee has this hybrid sort of federal employee appointment and then also has this sort of side contract for salary. That would be very, very rare. But it's not impossible. It's not impossible, but it's really no different than any of us who are federal employees. We come in, we're offered a salary, perhaps we ask for more based on our education or experience, but that does not make us contractors or that we have a contract. We're still federal employees and our benefits come from statutes and regulations, not from a contractual agreement. As to whether Ms. Miller is entitled to standby pay under the Federal Employees Pay Act, her liberal on-call requirements are explicitly excluded from the definition of at or within the confines of her station. While on call, Ms. Miller is not required to remain at any particular location, her home or otherwise. It actually says that her duty station is Baltimore. It doesn't say her home. It doesn't say the hospital. I mean, that's what it says in the document. So what does that mean? It means that she is confined only to a general geographical area, like in Husky. She can, as her testimony demonstrates, she is basically on her personal time when she is on call. She's visiting family. Her regular duty station is Baltimore, and your point is she's not confined to her regular duty station. The fact that she might go to the doctor or run an errand, is there any evidence that she ever did that outside the confines of Baltimore? No, but she is allowed to be within a one-hour radius of the city, and that would actually allow her to sort of go outside of the city itself and be back to the hospital within an hour. But, I mean, you go back and forth in your brief, sometimes saying she was confined to Baltimore and other times saying she had to be within an hour radius of the hospital. So what is it? Her duty station is Baltimore. VA requires that she return to the hospital within an hour, sometimes up to 12 hours. Right, so she wasn't permitted to go an hour away from Baltimore, because that presumably would be farther than an hour away from the hospital, right? Yes, she's not allowed to go an hour – well, she should be within an hour, one-hour radius of her job at the hospital, yes. But generally, she's confined to – her duty station is Baltimore, Maryland. Did I understand correctly that you said this law changed and that the earlier employees who Ms. Miller claims she was treated like were entitled to the 25 percent premium pay, but that Ms. Miller was hired after the law changed? Is that what I understood you to say? Yes, Your Honor. And so the new law, which is what, 7457 governs? What is the new law that governs her that you said was passed before she was hired that puts her outside? Yes, ma'am? 5 U.S.C. 5545. Okay, 5545. Yes. Well, but here's my question. It's my understanding that those employees who were hired before 5545 went into effect were continuing. They were grandfathered. They were allowed to keep receiving the 25 percent even after 5545 went into effect up until their retirement. Is that correct? That is correct. And you don't view that as improper for them to have continued under some grandfathered theory, I mean, to have received that additional pay? Well, I'm not certain about their job duties or what agreements or anything that they had. Right, but your point to us is that you can't have any agreement that's inconsistent with the law. So to the extent that they were grandfathered in by somebody other than Congress itself, why wasn't that all illegal too? I don't know if there is some provision that would allow them to be grandfathered in. I'm not aware of one. Well, but I thought you made the – I think you actually made the argument that those people were grandfathered and that the difference with Ms. Miller was that she started this job after 5545 went into effect. I thought I heard you make that argument earlier. Yes, Your Honor, I did. What I'm saying is I don't know what the situation was that allowed these employees to be grandfathered. So you'd like to retract your earlier statement that they were necessarily grandfathered just by virtue of having started prior to the enactment of 5545? Well, I misspoke, Your Honor, if I said that just by them working there that they were automatically entitled to it because they had been receiving it before. But I do know that they were allowed to continue to receive standby pay even after the law had changed. I don't know if the law had changed to say, well, going forward, any employees hired after X date are not entitled to it. There's just one section, 5545. It certainly doesn't have any language like that. It doesn't have any grandfathering-type language. It does not. So if that's the case, then all of those other employees that continue to receive the 25 percent up until their retirement after 5545 was enacted would likely have been wrongfully paid as well. I mean, there also could have been some OPM, it could have been a regulation or something. I'm not aware of one, but that does not mean that Ms. Miller does have a contractual agreement at all that she's entitled to. Okay, I think we have your argument. We have a few minutes of rebuttal time. For these reasons, we respectfully request that the Board affirm the trial court's decision. Thank you. Thank you. I would like to address what was last discussed, which was the grandfathering issue. And I believe there was testimony from Mr. Cox that, like Ms. Miller and like the other employee that started after her, these other employees who were on the 25 percent premium pay, he also went to the central office and got that specifically approved to be able to keep those individuals because there is a big difference between the 25 percent premium pay and the 10 percent on-call pay. And I'd also like to address the- background practice that OPM follows that says a new regime like this doesn't necessarily or even ever apply to existing employees or- I'm not aware. I mean, I think this is- It turns out there is one. My clerk just texted to me. It's 7457 allows an employee who was hired before to maintain the greater of the rate. So there was, it turns out. Okay, thank you. Sorry, go ahead. I'd also like to address the realities of Ms. Miller's duty station and the requirements of her. The on-call, I don't believe that the on-call presumes the level of responsibilities and restrictions that the standby did. Because literally, Ms. Miller was on-call for 24-7 for months. There were significant periods of time in which there was no other person on standby. And she was the only person on standby. So much so that she unfortunately missed her father's funeral in West Virginia because she couldn't travel an hour outside of the hospital. So although the government notes, one time she went to a child's ball game and she ran to the grocery store a few times. This was 13 years of significant restrictions on what she can do. And so that clearly doesn't put her under the on-call system. Well, but okay, the government has said they're not going to go after her for any sort of money that she had already been paid. And so this case is really only about the period of time going forward. Yes, and I'd like to make two points about that. One, she did receive a letter saying that the government wanted incredible amounts of money back from her. But then the government reconsidered, fortunately. And so that's no longer an issue. But this is very important going forward with regard to her pension. Because if she makes this much lower... Well, look, I'm not suggesting it's not important, but your claim about what she was doing or how she was restricted. I mean, now if she's going to be in the on-call section and she's going to fall under 55-45, these are the restrictions on her to receive the 10%. And that's it, right? I guess I don't understand. You were starting to suggest that there were a lot of very onerous burdens placed on her in the past when she was receiving 25%. But now going forward, she has to perform the obligations. Well, her job hasn't changed. So it's not as if she's on-call now and she has less restrictions on what she can do. She's still on the same standby obligations that she always was on. Now there's one other person, so she now splits the month. But she gets paid the 10% for that time period that she's on-call, correct? Yes, as opposed to the 25%. Do you have any case for the proposition that an employee can be a hybrid employee, can be both a federal employee and a contract employee? I didn't locate any such cases. The cases that were cited by the government were inapplicable-type cases where somebody was hired on-call and wanted to move to standby. But forget about that. Any case where any federal employee was deemed a hybrid employee? I'm not aware. I could look. Doesn't it seem that the Supreme Court contemplates an either-or proposition, that, in other words, the presumption is you're an appointee if you're working for a federal agency and that you can rebut it if you can establish that you are a pure contract employee. But being both doesn't seem to be something I've ever seen authorized. But it hasn't been not authorized. And I don't believe there are a lot of cases about these issues at all. So I'm not sure that this particular kind of situation has ever come up when somebody is 13 years in a position and the government seeks to take away the heart, essentially, of the salary, which is a substantial amount of money. Okay, Ms. King, thank you. We thank both counsel for their arguments.